Spalding, J.
There is but a single question growing out of the facts in this case. Was Black the agent of Webb in purchasing and storing this barley at Massillon ? or was he the vender of a thousand bushels of barley to Webb, to be delivered -¡'within a given time, at a certain place, and for a stipulated
price ? If the former, the law will cast the loss upon his principal ; but if the latter, the misfortune .will be his own, unless he had perfected a delivery of the grain before the accident.
We have none of us any doubt that the conduct of Black, in this whole transaction, was what the parties contemplated it *262 would be when they entered into the arrangement of the 7th February. He was expected to purchase the barley, in small parcels, at different intervals, and to store it, as occasion might require, at the appointed place in Massillon ; and when the quantity of a thousand bushels should be there deposited, it was doubtless the understanding that the warehouse receipts would be taken by Webb, and the balance of the purchase money be paid over to Black. But a contingency has happened that could not have been foreseen, and, of course, was not provided for by the parties. It was not anticipated that the canal reservoir at Massillon would break through its banks and flood the town. If it had been, the parties could have stipulated as to the loss arising upon the happening of that event. As it is, a loss has occurred without the fault of either party, and the law must decide upon whose shoulders it shall rest.
It seems to a majority of our number that this was a contract of purchase and sale, and not an agreement constituting an agency. If we change very slightly the order of the phraseology, the intent of the parties will become more apparent.
“I do agree to deliver at Reynold’s warehouse, in Massillon, by the middle of April next, 1,000 bushels of good merchantable barley, at 35 cents per bushel, and have received from William Webb $175 as an advance to buy barley for him.
“John Brack.
“ February 7, 1848.”
Now, it made no manner of difference with William Webb ^whether the price of barley rose or fell in the mai’ket between the 7th of February and the 15th of April, 1848. He was sure of 1,000 bushels at the price of 35 cents; and, peradventure, it might cost John Black 50 cents a bushel, before the day of delivery arrived. There is nothing characteristic of an'agency in this.
If Black purchased all or a part of this “ thousand bushels ” of barley from the farmers of Stark county, on a credit, his insolvency would not justify them in asserting a claim against Webb for the price of their property delivered to Black. There is nothing characteristic of an agency in this.
Again: Webb had no right, by the terms of the agreement, to dictate to Black when and where he should buy this barley, or when he should stop purchasing. There is nothing characteristic *263 of an agency in this. In fact, we do not discover from the testimony, that any right of property in this barley could vest in Webb—not even to the extent of the money advanced—until such time as Black should see fit to make actual delivery of the grain or pass over to him the warehouse receipts. It is in evidence that the warehousemen would have felt bound to deliver the barlejr to any person, or persons, presenting to them those receipts. These important evidences of ownership Black retained within his own control until after the loss.
How can it be said with certainty that this barley would have been transferred to Webb in case the warehouse had not been swept away? Black had, in himself, the absolute power of disposal, at any and all times, so long as he retained the receipts; and Webb could, with no sort of propriety, object to a sale of the property in store, so that, at the last, he received, in quantity and quality the barley, which Black had agreed to deliver to him.
By making application of these tests, and others that could be easily enumerated, we are brought to the conclusion that John Black, the plaintiff in error, purchased this barley—not as the agent or factor ofWm. Webb, but on his own private account, and for the purpose of filling a contract of sale, ^entered into, and then subsisting between himself as the vender, and Wm. Webb as the vendee.
In this view of the subject, the risk of the property would remain with Black until he should deliver the barley or transfer the contract thereof to Webb. The loss happened before such delivery or transfer, and must be borne by Black alone.
The judgment of the common pleas will be affirmed with costs.
Ranney, J., dissented.
Hitchcock, C. J., was absent, and did not participate in the decision of this cause.